UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| TONY A. WALKER, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Cause No. 4:16-cv-3 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Tony Walker appeals the denial of his application for disability insurance benefits and Supplemental Security Income. The ALJ assessed Walker as having several severe impairments but found that he was nonetheless capable of performing unskilled light work. But in finding Walker capable of light work, the ALJ entirely ignored an assessment of a state medical expert that Walker is limited to sedentary work. The ALJ also did not adequately address Walker's testimony about his subjective physical symptoms, including his pain. For these reasons, I must remand this case for further consideration by the ALJ.

## Background

Walker's claim for benefits is based on several impairments, both physical and mental. The primary physical basis for Walker's claim is pain in his right ankle apparently stemming from a 2009 injury, as well as lower back pain rooted in a work-related car collision. (*See, e.g.*, DE 9 at 121–22, 126–31.) This case is complicated by

the fact that Walker's claim period includes a period when substance abuse disorders prevented him from earning a living and a period when he was able to earn a living. Walker was severely impaired by substance abuse disorders from the beginning of the claim period in June 2006 through March 2011. (*Id.* at 33.)

Walker was substantially gainfully employed from March 2011 to May 2013. (*Id.* at 109–11, 113, 181–82, 495.) He turned 50 in November 2011. (*Id.* at 467.) The ALJ found that, during the entire claim period, Walker has had severe impairments apart from substance abuse: an affective/mood disorder including depression, an anxiety-related disorder, the late effects of a right ankle fracture, hepatitis C, and low-back pain. (*Id.* at 33.) Walker does not challenge these findings or the ALJ's additional assessment that Walker has had several non-severe impairments. (*Id.* at 33–35.)

Walker first briefly used heroin around 1984, while in the Navy. (*Id.* at 135–36.) He began using again around 1996 and developed a serious addiction. (*Id.* at 136.) Beginning around 2006, Walker was homeless and earned money by collecting scrap material. (*Id.* at 138.) His claim alleges a start-date in June 2006. (*Id.* at 456.) Walker entered a residential treatment program for substance abuse around June 2009. (*Id.* at 48, 134.) Also around June 2009, Walker injured his ankle attempting to jump a fence while apparently trying to evade the police. He was unsuccessful, and the police brought him, under arrest, to the hospital to see to his right ankle and his left ribs. Walker was able to walk. (*Id.* at 562, 918.) Walker's ankle was x-rayed and doctors diagnosed a sprain and put him in an aircast. (*Id.* at 563.) Since then, he has complained

of pain in his right ankle. (*See, e.g.*, *id.* at 565, 590, 620, 783, 837, 871, 875–76, 896, 929–30, 952–53, 1042, 1044, 1102, 1240.)

After getting control of his substance abuse issues around 2010, Walker worked and was able to support himself from March 2011 through May 2013. (*Id.* at 32, 134, 495.) But he claims that he was unable to sustain employment after his ankle pain and depression continued to cause him to miss up to four or five days of work per month. (*Id.* at 142, 144.) Walker claims that his combination of impairments prevents him from maintaining full-time employment in a competitive setting. (*See, e.g.*, *id.* at 107–8.)

The ALJ decision presently under review is the second opinion by an ALJ. The ALJ had issued a prior decision in May 2012 (*Id.* at 219), but the Appeals Council vacated and remanded that decision in June 2013. It directed the ALJ to correct an omission in the record and to fully consider Walker's history of substance abuse disorder. (*Id.* at 236–38.) On remand, the ALJ held hearings in February 2014 and July 2014. (*Id.* at 104, 176.)

Walker testified at some length during both of those hearings. (*Id.* at 108–49, 183–95.) At the first, state medical experts Dr. Norris Dougherty and Dr. Joseph Cools testified, along with the vocational expert Leonard Fisher. (*Id.* at 29, 160–68, 149–59, 168–73.) Dr. Dougherty opined, in relevant part, that Walker is limited to sedentary work. (*Id.* at 162–63.) Dr. Cools opined as to Walker's work-related mental and psychological limitations, testifying that he could do regular work activity. (*Id.* at 158–60.) Dr. Cools assessed Walker as being able to do simple to semi-skilled work with

3

some limitation in concentration, persistence, and pace. Walker would be able to interact appropriately with others without limitation and would not need any special consideration like pace allowances or low-stress work. (*Id.* at 158–59.) Vocational expert Fisher classified Walker's past jobs generally as skilled with medium to heavy exertion. (*Id.* at 169–70.) He went on to testify that Walker was limited to unskilled light work, which ruled out all of Walker's past work, but opined that Walker was able to do other available jobs. (*Id.* at 171–72.)

Psychological medical expert Dr. Jeffrey Andert and vocational expert Thomas Gusloff testified at the second hearing on remand. (*Id.* at 29, 196–204, 204–10.) Dr. Andert testified that from June 2006 through February 2011 Walker could have worked but for the substance abuse issue, although he was limited to unskilled work. (*Id.* at 199–201.) According to Dr. Andert, Walker had the same capacity from March 2011 to the date of the hearing: performing unskilled work, making judgments on simple work-related matters, interacting appropriately with supervisors and coworkers, and responding to routine changes at work. Dr. Andert did not see support in the record for Walker's claim that he had two to three bad workdays per month during which he could not function. (*Id.* at 201–04.) The ALJ's first hypothetical to vocational expert Gusloff included unskilled work with the ability to occasionally lift and carry 20 pounds and frequently lift 10 pounds and to stand or walk for six hours in an eight-hour workday. (*Id.* at 205–06.) Vocational expert Gusloff testified that Walker could not do his past work, but that there were other jobs he could do. (*Id.* at 206.) Under a second,

much more limited hypothetical, Gusloff seemed to indicate there were no jobs Walker could do. (*Id.* at 207–08.)

In addressing Walker's application, the ALJ navigated through the familiar five-step process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also* DE 9 at 29–52.) The ALJ divided his analysis into the period when Walker was impaired by substance abuse and the period when the problem was in remission (after March 2011). At step one, the ALJ determined that Walker engaged in substantial gainful activity from March 2011 through May 2013, but that he did not do so either before or after that time within the claim period. (DE 9 at 32–33.) At step two, the ALJ found that Walker had established several physical and mental "severe impairments" during the entire claim period, as well as the severe impairment of poly-substance abuse disorder from June 2006 through March 2011. (*Id.* at 33.) The ALJ also discussed Walker's several non-severe impairments. (*Id.* at 33–35.) At the third step, the ALJ determined that, from June 2006 through March 2011, Walker's impairments, including the substance abuse disorders, met the severity of impairments listed in the Social Security regulations. (*Id.* at 35–36; *see also* 20 C.F.R. § 404(P), App. 1.) The ALJ went on to find that, even without the substance abuse disorder, Walker would have had severe impairments from 2006 to March 2011, but they would not have met or medically equaled a listed impairment. (DE 9 at 37.) He also found that Walker did not have an impairment or combination of impairments that met or equaled a listed impairment from March 2011 through the date of the ALJ's decision. (*Id.* at 39–41.)

The ALJ next considered Walker's residual functional capacity. He found that from June 2006 through March 2011, had Walker not been impaired by the substance abuse disorder, he could have done light work with limits on certain motions, including climbing, balancing, and stooping. (*Id.* at 41.) The ALJ determined that, during this period, Walker would have been able to do simple and semi-skilled work, make judgments in doing such work, interact appropriately with supervisors and co-workers, and respond to usual work situations and changes. (*Id.* at 41–45). From March 2011 through the date of the ALJ's decision, the ALJ found Walker capable of light work with the same physical and mental limitations as during the earlier period. (DE 45–48.) Based on his residual functional capacity, the ALJ found Walker unable to perform his past relevant work either from 2006 to 2011 or from 2011 to the decision date. (*Id.* at 48–49.) But at step five of the process the ALJ found that if Walker had not been impaired by substance abuse from June 2006 through March 2011, he would have been able to perform a significant number of jobs. (*Id.* at 50–51.) The ALJ also found that there were jobs Walker could have done from March 2011 through the date of the ALJ's decision. (*Id.* at 51–52.)

Walker argues in his appeal that the ALJ failed to include limitations in social functioning and concentration, persistence, and pace in the scenarios he presented to the vocational experts. He next challenges the ALJ's credibility finding as cursory and inappropriately dismissive of Walker's subjective symptoms of pain and physical limitation. Finally, Walker points out that the ALJ failed entirely to consider the opinion

6

of one of the medical experts who testified at a hearing. I will take up these arguments in reverse order.

## Discussion

The ALJ's ultimate determination about eligibility for benefits must be based on "substantial evidence" in the record. *See* 42 U.S.C. § 405(g); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). It is a pretty modest standard that is based on reasonableness. If a reasonable person might find that the evidence is sufficient to support the conclusion, then that is enough to say it is supported by "substantial evidence." *Skinner*, 478 F.3d at 841 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This has also been described as sufficient evidence to form a "logical bridge" to the ALJ's conclusions. *See, e.g., Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The logical bridge must be built—it is not enough to simply collect the building materials. That is to say that the ALJ's reasoning must be sufficiently articulated to permit meaningful review. *See Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002). "[W]hat matters are the reasons articulated *by the ALJ*." *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (emphasis in original). In determining whether the ALJ's opinion meets the substantial evidence requirement, I will review the record as a whole but can't re-weigh the evidence or substitute my judgment for that of the ALJ. *See Terry*, 580 F.3d at 475.

One of Walker's three bases for appeal is that the ALJ failed to consider the medical opinion of one of the state experts. While the introduction to the ALJ's opinion mentions that state medical expert Dr. Dougherty testified at the February 2014 hearing,

7

(*id.* at 29, 162), the opinion never mentions Dr. Dougherty again. The ALJ never discussed Dr. Dougherty's assessment of Walker and assigned no weight to Dr. Dougherty's opinion. This is important because Dr. Dougherty testified that, in his medical opinion, Walker should be found limited to sedentary work—not light work as found by the ALJ. (*Id.* at 162–63.) What makes this omission so striking is the fact that Dr. Dougherty's assessment corroborates that of Dr. Stephen Clingman, who treated Walker and opined that Walker was limited to sedentary work and might miss four to five days of work per month due to his health. (*Id.* at 45, 1178–80.) The ALJ gave Dr. Clingman's opinion little weight, explaining that it was inconsistent with the rest of the record's objective medical evidence. But it was consistent with Dr. Dougherty's medical opinion, and it was certainly material to the ultimate issues the ALJ decided.

It is the ALJ's prerogative to assess all of the evidence, according more or less weight to various pieces as appropriate. The ALJ may have reached the same conclusions even after considering Dr. Dougherty's testimony, but the ALJ needed to consider the testimony and ensure that the opinion reflected that consideration. The ALJ's opinion below violates the mandate "that adjudicators must always carefully consider medical source opinions about any issue," or, put another way, that "opinions from any medical source about issues reserved to the Commissioner must never be ignored[.]" SSR 96-5p, 1996 WL 374183 (July 2, 1996); *see also* SSR 16-3p, 2016 WL 119029 (Mar. 16, 2016); *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). So I must remand to allow the ALJ to correct this apparent oversight.

8

Walker's second argument is that the ALJ failed to accord due weight to Walker's report of his subjective symptoms, which led to a faulty credibility assessment. The ALJ found Walker credible with respect to certain psychological symptoms and limitations. (DE 9 at 36.) But the ALJ went on to state, using boilerplate language, "that the claimant's medically determinable impairments could . . . reasonably have been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms . . . are not credible to the extent they are inconsistent with the residual functional capacity assessment" in the ALJ's decision. (*Id.* at 42, 46 (addressing the substance-use and post-substance-use periods, respectively, with only minor, cosmetic textual differences between the two); *id.* at 47 (similar language with respect to subjective reports of mental limitations).)

Walker alleges that these credibility assessments failed to properly address SSR 96-7p, but that ruling is no longer operative. *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996). It was superseded by SSR 16-3p, which took effect on March 28, 2016 and eliminated the term "credibility" and the resulting evaluation of a claimant's character. *See* SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016). This is not a change in the law but a clarification intended to provide helpful guidance to adjudicators in more closely applying the Social Security Act and the regulations that implement it. For this reason, it is appropriate to apply the current ruling to the present case. *See Pope v. Shalala*, 998 F.2d 473, 482–83 (7th Cir. 1993) (overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561

(7th Cir. 1999)); *see also Tarwacki v. Colvin*, No. 3:14-cv-1735, 2016 WL 1253548, at *7, *7, n.13 (N.D. Ind. Mar. 30, 2016) (remanding for reconsideration consistent with the then brand-new SSR 16-3p). On remand, therefore, the ALJ is directed to evaluate the intensity, persistence, and limiting effects of Walker's impairments consistent with SSR 16-3p.

In reviewing the ALJ's assessment of Walker's allegations about his symptoms, it is notable that the ALJ never describes Walker's physical symptoms in any detail. The ALJ and Walker's attorney questioned Walker about his symptoms and limitations at length (*see, e.g.*, DE 9 at 122–33, 145–49, 185–86), yet the ALJ's decision does not address the details Walker supplied about the nature of his pain or his ability to stand, walk, sit, and carry. Instead, it lists dates on which Walker had medical visits, and test results or his doctors' objective medical assessments from those visits (*see, e.g., id.* at 39, 42, 47), but it omits, for example, discussion of Walker's testimony about why he stopped working in 2013. (*Id.* at 47, 142–43, 185–86, 190–91.) The decision does not address the consistency of Walker's complaints, or his adherence to his doctors' recommendations, which are among the factors that should be considered pursuant to SSR 16-3p.

On remand, the ALJ might again determine that Walker is able to work, but in doing so he must consider Walker's subjective symptoms and ensure that the written decision reflects that consideration. "[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related

10

symptoms alleged by the individual." SSR 16-3p; *see also Israel v. Colvin,* 840 F.3d 432, 440 (7th Cir. 2016); DE 9 at 163 (Dr. Dougherty testifying that "X-rays don't show pain").) What's more, the ALJ's opinion uses a version of the rote language that the Seventh Circuit has found to be inadequate in the context of the old SSR 96-7p credibility assessment. The Seventh Circuit has taken issue with the language because it states the ALJ's conclusion, then finds the claimant not credible to the extent his claims are inconsistent with the ALJ's conclusion. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 644–46 (7th Cir. 2012). The logic of this rote language remains just as faulty now, after the clarification in SSR 16-3p that character assessments of credibility are to be avoided.

Because I am remanding this case based on the two issues discussed above I need not fully discuss the third basis for Walker's appeal—that the ALJ failed to include mental limitations in the hypothetical he presented to the vocational expert. (DE 12 at 16–18.) It is enough to say that I disagree with Walker on this point. I think that the ALJ adequately included Walker's mental limitations in his hypothetical questions to the vocational experts. The ALJ's specific questioning of Drs. Andert and Cools, and his use of their answers in crafting the hypothetical questions for the vocational experts, builds the requisite logical bridge. This distinguishes the present case from *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014), an opinion Walker's opening brief quotes at length. (DE 12 at 17.) In any event, on remand, should there be another hearing, and Walker's counsel can be present to question the vocational expert and cure any deficiencies in the ALJ's formulation of the hypothetical questions.

## Conclusion

For the foregoing reasons and pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED,** and the case is **REMANDED** for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: February 10, 2017.

s/ Philip P. Simon
JUDGE, UNITED STATES DISTRICT COURT